IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LAURIE KENNINGTON,
      Plaintiff,

vs.                                      Case No. 3:05cv358/LAC/EMT

JO ANNE B. BARNHART,
Commissioner of the
Social Security Administration,
      Defendant.

_____/

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § § 401, *et seq.*  It is now before the court pursuant to sections 405(g) and 1383(c)(3) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the Act.

Upon review of the record, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; therefore, the decision of the Commissioner should be reversed and remanded.

I.      PROCEDURAL HISTORY

This suit involves two applications made under the Act.  The first is an application for DIB under Title II of the Act, 42 U.S.C. §§ 401 *et seq.* (Tr. 64–66).[1]  The second is an application for SSI benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* (Tr. 524–26).

Plaintiff applied for DIB on June 25, 2002, alleging disability since December 15, 2001 (Tr. 64–66), and she applied for SSI benefits on March 28, 2003, alleging disability since December 15, 2001 (Tr. 524–26).  Her applications were denied initially and on reconsideration (Tr. 38–45, 527).  On January 22, 2004, following a hearing held on October 8, 2003, an administrative law judge (ALJ) rendered a decision in which he found that Plaintiff was not under a "disability" as defined in the Act at any time through the date of the ALJ's decision (Tr. 17–32).  Thus, Plaintiff was not entitled to a period of disability, DIB under Title II, or SSI benefits under Title XVI.  On August 1, 2005, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 5–8).  The Appeals Council's action made the ALJ's decision the final decision of the Commissioner and, therefore, subject to review in this court.  Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998).  Plaintiff's appeal from the final decision of the Commissioner is now before this court.

II.     FINDINGS OF THE ALJ

On January 22, 2004, the ALJ made several findings relative to the issues raised in this appeal (Tr. 17–32):

  1)      Plaintiff meets the non-disability requirements for a period of disability and DIB set forth in Section 216(I) of the Act and is insured for benefits through the date of the ALJ's decision.[2]

  2)      There is no evidence that Plaintiff performed work activity after her alleged onset date.

---

[1]All references to "Tr." refer to the Transcript of Social Security Administration Record filed on November 25, 2005 (Doc. 8).

[2]Thus, the time frame relevant to this appeal is December 15, 2001 (alleged onset) to January 22, 2004 (date last insured).

3)      Plaintiff has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(b) and 416.920(b).[3]

4)      Her medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5)      Plaintiff's allegations regarding her limitations are not totally credible.

6)      Plaintiff has the residual functional capacity (RFC) to perform the full range of sedentary work.[4]

7)      She is unable to perform any of her past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

8)      At the time of Plaintiff's alleged onset date, she was a "younger individual between the ages of 18 and 44" (20 C.F.R. §§ 404.1563 and 416.963), and she has "more than a high school education" (20 C.F.R. §§ 404.1564 and 416.964).

9)      Plaintiff has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 C.F.R. §§ 404.1568 and 416.968).

10)     Based on an exertional capacity for sedentary work, and Plaintiff's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.28.

11)     Plaintiff was not under a "disability," as defined in the Act, at any time through the date of the ALJ's decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

## III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("This Court may reverse

---

[3]Plaintiff's severe impairments include degenerative disc disease and depression (*see* Tr. 19, 27).

[4]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567(a).

the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).   "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[5] the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, he is not disabled.

2.      If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.   PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

A.    Personal History

Plaintiff testified at a hearing before the ALJ on October 8, 2003 as follows.  She was born on June 19, 1962 and was forty-one years old at the time of the hearing (Tr. 658).  She is divorced

---

[5]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims (see 20 C.F.R. §§ 404, 416).  Therefore, citations in the remainder of this report and recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

and lives with her two girls, aged sixteen and eight (Tr. 658–59).  She is 5'6", weighs 195 pounds, and admits that her weight should be lower at about 150 pounds (Tr. 659).  She states that she is overweight because she has been inactive due to her disabilities, which include herniated discs in her neck and back (Tr. 659, 668).  She reviewed her medications with the ALJ and confirmed that Exhibit 17E accurately reflected her current medications (Norvasc, Prevacid, Paxil, Xanax, Methadone, Lortab, Baclofen, and Soma) (*see* Tr. 132, 659).  She indicated that the medications cause trouble driving and have not worked as effectively as she had hoped, and her doctors were helping her by adjusting the medications (Tr. 660).  She explained that she alleged disability as of December 15, 2001 because that is when she filed for disability, but she stated that she has actually been disabled for a longer period (Tr. 661).  She described her previous work history as including housekeeping, telemarketing, and assisting a pharmacist, and she stated that she last worked in March 2001 (Tr. 662).

Plaintiff next discussed her physical limitations.  She stated that she cannot style her hair because she is not able to hold her hands over her head for very long, she cannot perform repetitive tasks, and she tries to drive as regularly as she can (Tr. 664).  She grocery shops, but relies on her daughters to carry the groceries (Tr. 665).  She cooks sometimes, but most of the time her daughter cooks (*id.*).  Plaintiff performs only limited household chores and no longer gardens (Tr. 666).  She generally watches television during the day and talks on the phone (*id.*).  She is very stiff, finds it hard to get out of bed, and states that it is difficult to do any type of physical activity (Tr. 669A).  Her arms and hands often go numb, and she cannot lift more than ten pounds (Tr. 669A–670).  Plaintiff can stand for only about thirty minutes at a time, and she can sit for only twenty to thirty minutes at a time because she becomes stiff if she sits any longer than that (Tr. 671). Plaintiff tries to read but cannot concentrate, stating that she has never even completed an entire book since she was in school (Tr. 666, 668).  She explained that the biggest problems preventing her from working are pain in her back and neck and an inability to stay focused (Tr. 667).  She described an inability to return to the telemarketing job because the use of a computer bothered her neck and hands (Tr. 674).  She also has trouble concentrating and paying attention, and she has been diagnosed with anxiety, depression, and ADHD (Tr. 667–68).

B.      Relevant Medical History[6]

Plaintiff underwent a right carpal tunnel release at West Florida Medical Center on March 5, 1997 (Tr. 140).  She was pleased with the result and decided to undergo a left carpal tunnel release on August 12, 1997 (Tr. 139, 152).  She underwent occupational therapy after her surgeries (Tr. 141–46).  On October 24, 1997, Plaintiff reported that her hands were stronger and less painful, and she reported no pain, numbness, or tingling associated with performing functional tasks (Tr. 141).  She stated that she was ready to get back to work (*id.*).

Plaintiff presented to the emergency room at Santa Rosa Medical Center on November 10, 2002 with complaints of right arm pain following a fight with another female (Tr. 180, 182).  An x-ray of the right forearm revealed an oblique fracture of the distal ulna at the junction of the middle and distal third (Tr. 187).  The fracture appeared in normal alignment (*id.*).  An x-ray of the right wrist revealed no acute fractures or regions of bony destruction (Tr. 188).  The carpal bones were intact (*id.*).

Plaintiff was a patient of Sal Vernali, M.D., and Roy Reyes, M.D.  Her initial visits with these physicians, from October 2001 through July 2002, concerned various complaints, including sore throat, coughing, "stopped up" ears, congestion, urinary problems, neck pain, shoulder pain, hypertension, hemorrhoids, right arm pain, fatigue, chills, tooth ache, and allergies, and Plaintiff was generally treated with medications (*see* Tr. 202–17).  On December 5, 2002, she presented to Dr. Reyes with complaints of hypertension, cardiomegaly, and endometriosis (Tr. 433).  Her blood pressure was 132/85 (*id.*).  She was given Xanax and Norvasc (*id.*).  The next office note is dated January 9, 2003 (Tr. 432).  On that date, Plaintiff's blood pressure was 160/100 (*id.*).  She was given medication for sinus pain and drainage (*id.*).  She presented next on February 18, 2003 (Tr. 431).  On that date, her blood pressure was 142/90 (*id.*).  Her medications were refilled and she was referred for pain management (*id.*).  On March 18, 2003, her blood pressure was 120/82 (Tr. 424).

---

[6]Although Plaintiff alleged disability on the basis of physical and mental impairments, Plaintiff does not dispute the ALJ's finding that she was not disabled on the basis of any mental impairment.  Therefore, evidence concerning Plaintiff's mental impairments is not summarized or discussed in this report and recommendation.  Additionally, the record contains medical evidence submitted to the Appeals Council after the ALJ's decision was rendered (Tr. 528–647).  However, Plaintiff alleges no error in connection with the Appeals Council's review; thus, only evidence that was before the ALJ is considered in this report and recommendation.

She was given medication and an EKG was ordered to evaluate her chest pain (*id.*).  On April 29, 2003, Plaintiff's blood pressure was 130/80 (Tr. 423).  On May 15, 2003, examination of her lungs revealed "decreased breath sounds with rhonchi, no wheezing or rales" (Tr. 422).  Her heart had regular rate and rhythm with no gallops or murmur, and her extremities were symmetrical with no edema, cyanosis, or clubbing (Tr. 421). On June 30, 2003, Plaintiff's medications were refilled (*id.*). On July 22, 2003, her blood pressure was 120/60, and she was given Xanax (Tr. 420).  The next office note is dated August 21, 2003, at which time Plaintiff's blood pressure was 120/80 (Tr. 419). The last office note from Dr. Vernali is dated September 17, 2003 (Tr. 415).  On that date Plaintiff's blood pressure was 110/70, her examination was essentially normal, and she was given refills of her medications (*id.*).

On December 17, 2002, Dr. Vernali examined Plaintiff at the request of the Social Security Administration  (*see* Tr. 194–201).  Plaintiff reported that she had degenerative disc disease of the neck, wrist pains, shoulder pains, back pains, anxiety, and depression (Tr. 194).  Dr. Vernali noted that Plaintiff ambulated from the office to the examining room without assistance (*id.*).  She reported generalized weakness, but no shortness of breath with daily activity (Tr. 195).  She admitted to general myalgia and joint pain to the wrists, right elbow, neck, lower back, and left knee (*id.*). Examination revealed intact upper extremities, strength at 4/5 in the right upper arm and 4/5 in the left upper arm, and an abnormal range of motion to the shoulders and right elbow (*id.*).  Plaintiff had pain and tenderness to those areas (*id.*).  No deformities were noticed (*id.*).  Grasp was 5/5 in the right hand and 3/5 in the left hand, strength in the right and left lower leg was 4/5 (Tr. 195–96).  No deformities were noted (Tr. 196).  Plaintiff had an abnormal range of motion to the lumbar and cervical spine, hips, and knees, with pain and tenderness in those areas (*id.*).  Deep tendon and plantar reflexes were diminished (*id.*).  Examination of the spine revealed the presence of paravertebral muscle spasms, and seated and supine straight leg tests were positive bilaterally (*id.*). Plaintiff was able to bend forward and touch above her knees but reported pain associated with the movement (*id.*).  Touch, pinprick, vibration, and coordination were normal, and Plaintiff had a normal gait and did not need an assistive device (*id.*).

Dr. Vernali's impression was degenerative disc disease of the neck, wrist pain (status post carpal tunnel surgery), shoulder pain, back pains, hypertension, reflux, history of anemia, and

obesity (*id.*).  Dr. Vernali recommended that Plaintiff follow up with a rheumatologist due to degenerative disc disease of the neck, treat with analgesics and anti-inflammatories, that the left ventricular function be evaluated, that the reflux episodes be treated, and that Plaintiff control her weight due to her moderate obesity (Tr. 197).

Plaintiff first saw Kurt A. Krueger, M.D., in 1993 after a work-related injury that resulted in cervical and lumbar disc disease (Tr. 403).  She was treated with epidural injections and had good results (*id.*).  However, she was injured in an automobile accident in January 2003, and her condition worsened (*id.*).  She saw Dr. Krueger in May 2003 and reported experiencing worsening headaches and neck pain, whereas before the accident, she had only minimal spasming and only intermittent to mild pain (*id.*).  She also reported waking up because of pain, which she had not experienced prior to the accident (*id.*).  She described her pain as a 9-10 on a 0-10 scale, and at its best as a 6-7 (*id.*).  She described an aching, burning, sharp, numbing pain, which usually increased with sitting or standing too long (*id.*).  Musculoskeletal exam revealed 5/5 strength in all muscle groups, although on the right side the triceps and grips were 4/5 (Tr. 405).  She had minimal atrophy to the right forearm (*id.*).  Motor strength reflexes were 2/4 equally and bilaterally to the upper and lower extremities (*id.*).  Gait and station were normal, no appendicular or truncal ataxia was noted, no nystagmus was elicited, no abnormalities were noted during the Romberg maneuver, and no abnormal toe walking or coordination was noted (*id.*).  No upper extremity dural tension signs were noted and straight leg raising test was negative bilaterally (*id.*).  Dr. Krueger's impression was myofascial pain, neck pain, cervical degenerative disc disease and cervical radiculopathy (Tr. 406).  Dr. Krueger noted that since Plaintiff responded well to epidural injections in the past he would pursue those again (*id.*).  He prescribed Lortab along with a Baclofen trial and gave Plaintiff three trigger point injections (*id.*).

On June 11, 2003 and June 25, 2003, Plaintiff received cervical epidural injections (Tr. 396-97, 401-02).  On June 25, it was noted that Plaintiff gained "mild overall improvement" since June 11 (Tr. 396).  The next office note is dated August 15, 2003 (Tr. 394).  On that date, Plaintiff reported her neck pain was approximately 25% better after receiving the epidural injections (*id.*).  She reported she still had intermittent numbness into the right shoulder and arm (*id.*).  She also reported worsening low back and left lower extremity pain, indicating that the pain radiated across

the low back and then down the left leg, and she rated the pain at a level 8 on a 0-10 scale (*id.*). Examination revealed that Plaintiff was alert and oriented, her memory was intact, she had normal attention span and concentration, her receptive and expressive skills were normal, and she had an adequate fund of knowledge concerning current and past events and adequate insight for her age (*id.*). Examination of her head, neck and upper extremities revealed moderate overall guarding, and she transitioned with some difficulty and had reduced range of motion (*id.*). Palpation revealed generalized pain throughout the posterior neck and shoulder girdle, primarily centered over the lowermost mid cervical region at the C7-T1 inner space and lateral (Tr. 395). Examination of her low back and lower extremities revealed marked overall guarding, and she walked with a guarded, wide-based, and slightly intermittent left antalgic gait (*id.*). Sensory examination showed slight numbness throughout the lateral aspect of her left posterolateral thigh and calf (*id.*).

The last treatment note from Dr. Krueger is dated September 4, 2003 (Tr. 392). On that date, Plaintiff reported that she continued to have low back pain radiating into the left leg and that the pain was a 5-6 on a 0-10 scale (*id.*). She reported that a neuromuscular stimulator had been somewhat helpful (*id.*). Examination revealed that Plaintiff was alert and oriented, her memory was intact, she had normal attention span and concentration, and receptive and expressive language skills were again found to be normal (*id.*). Examination of the low back and lower extremities was essentially unchanged (Tr. 393). She had moderate guarding and walked with a guarded, slightly wide-based, left antalgic gait (*id.*). Straight leg raising (SLR) was positive on the left at 60 degrees, and she had contralateral left-sided pain with right SLR maneuvers (*id.*). Examination of the head, neck and upper extremities revealed reduced range of motion, and she had tenderness on palpation of the bilateral posterior paraspinous musculature, trapezius and rhomboid complexes, as well as positive spurring at the C5 and C6 levels (*id.*). Plaintiff indicated her desire to undergo a selective nerve root blockade for her left L4-5 disc herniation (*id.*).

Dr. Krueger completed a Clinical Assessment of Pain form in June 2003, finding that Plaintiff had pain present to such an extent as to be distracting to the adequate performance of daily activities or work (Tr. 309–10). He also found that physical activity would greatly increase pain, and to such a degree, as to cause distraction from tasks or total abandonment of tasks (Tr. 309). Dr. Krueger further found that "pain and/or drug side effects could be expected to be severe and to limit

effectiveness due to distraction, inattention, drowsiness, etc." (*id.*).  Dr. Krueger indicated, however, that treatments for pain were quite successful and were ongoing (Tr. 310).

Dr. Krueger also completed a physical capacities evaluation in June 2003 on which he found that Plaintiff could sit for two hours at a time and stand or walk for one half-hour at a time (Tr. 310A).  He also found that she could sit for a total of four hours and stand or walk for a total of two hours during an eight-hour day (*id.*).  He further found that Plaintiff could frequently lift up to five pounds and occasionally lift and carry up to ten pounds, but she could never lift or carry more than ten pounds, and she could use her hands for simple grasping, but not for pushing and pulling of arm controls or for fine manipulation (*id.*).  Dr. Krueger found that Plaintiff could not crawl or climb, but she was able to occasionally bend, squat, and reach (*id.*).  Finally, he found that Plaintiff would be totally restricted from activities involving unprotected heights or moving machinery (*id.*).

Plaintiff was also treated by Robert Sackheim, M.D.  She initially saw him on August 6, 2002, with complaints of pain in her head, neck, right shoulder, right arm, and lower back (Tr. 273).  She reported that she was being treated by a chiropractor (Tr. 274).  An MRI of the cervical spine on February 27, 2001 revealed a C5-6 left paracentral disc herniation with a smaller right paracentral herniation at C6-7 (Tr. 278).  An MRI of the lumbar spine on September 16, 2002 revealed a L4-5 central HNP (herniated nucleus pulposus) with questionable extruded fragment and minimal eccentricity toward the left (Tr. 276).  On September 3, 2002, Plaintiff was given a trigger point injection (Tr. 271).  The next office note is dated October 1, 2002 (Tr. 270).  On that date, Dr. Sackheim referred Plaintiff to a surgeon, but she refused treatment or the surgical consult (*id.*).  Plaintiff presented again on October 22, 2002 with complaints of low back pain (Tr. 269).  Dr. Sackheim noted that she refused a trigger point injection (*id.*).  On November 26, 2002, Plaintiff presented with complaints of a toothache and sinus infection (Tr. 267).  She was given medication and referred to a dentist (*id.*).  The remaining office notes show that Plaintiff presented requesting medication refills (*see, e.g.*, Tr. 263, 264, 265, 266, 268, 272).

Additionally, Plaintiff was a long term client of the Walters Chiropractic Clinic (*see* Tr. 311-73; 377-87).  She was treated for neck and back pain with hot/cold packs, electric muscle stimulation, massage, and ultrasound (*see id.*).

Finally, the record contains evidence of an x-ray and additional MRIs.  Plaintiff presented to the emergency room at Santa Rosa Medical Center on January 25, 2003 with complaints of neck and upper back pain following an automobile accident (Tr. 255).  An x-ray of the cervical spine was negative (Tr. 260).  An MRI of the lumbar spine on August 18, 2003 revealed degenerative disc disease and facet arthrosis and a left lateralizing disc herniation at L4-5 (Tr. 390).  An MRI of the cervical spine on September 15, 2003 revealed C6-7 broad central and left central disc herniation producing spinal stenosis and neuroforaminal stenosis and C5-6 left central disc herniation producing left sided spinal stenosis (Tr. 389).

C.       Other Information Within Plaintiff's Claim File

A Disability Specialist found that Plaintiff could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds.  The specialist further found that Plaintiff could sit, stand and/or walk for about six hours in an eight-hour workday, and she would have an unlimited ability to push and/or pull with her hands and/or feet, subject to weight restrictions (Tr. 237).  Additionally, Plaintiff would have only occasional postural limitations, but not manipulative, visual, or communicative limitations (Tr. 238-40).  The only environmental limitation noted was that Plaintiff should avoid concentrated exposure to hazards, such as machinery or heights (Tr. 240).

A second State Agency physician, Mary Elizabeth Seay, M.D., found the same restrictions as those recited above (*see* Tr. 300-07).  The only difference is that Dr. Seay found that Plaintiff would have frequent limitations (instead of occasional) in her ability to climb ramps or stairs and balance (Tr. 302).

V.      DISCUSSION

Plaintiff raises four issues on appeal.  She contends that the ALJ committed reversible error by failing to give controlling weight to the opinion of Dr. Krueger, a treating physician; by failing to find that she meets or medically equals Listing 1.04 for disorders of the spine; by failing to properly consider the opinion of the vocational expert (VE); and by failing to find Plaintiff's testimony of disabling pain credible (Doc. 11 at 1–2).

A.       Opinion of Dr. Krueger

The ALJ acknowledged the pain assessment provided by Dr. Krueger, a treating physician, but declined to give it controlling weight (Tr. 27).  He also acknowledged the physical capacities

evaluation of Dr. Krueger but ultimately assessed an RFC that appears to be less restrictive than what he suggested (*see* Tr. 27, 31).[7]

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See* Lewis v. Callahan, 125 F.3d 1436, 1439–1441 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  "'[G]ood cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citation omitted).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See* Edwards, 937 F.2d 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

However, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  Generally, a treating physician's opinion is entitled to more weight than a consulting physician's opinion.  *See* Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

---

[7]Dr. Kruger's "lifting and carrying" restrictions are compatible with sedentary work, but his other findings may limit Plaintiff's ability to perform the full range of sedentary work.

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether Plaintiff meets a listed impairment, a claimant's RFC (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors, because those ultimate determinations are the providence of the Commissioner. 20 C.F.R. § 404.1527(e).

Here, the ALJ found that the "the records clearly conflict" with the opinions of Dr. Krueger regarding Plaintiff's pain (Tr. 27). In making this finding, the ALJ noted that all of Plaintiff's treating physicians found that Plaintiff's condition improved with treatment and medication (*id.*). The ALJ then specifically referenced Dr. Krueger's note that Plaintiff responded to epidural injections, that the muscle stimulator had been helpful, and that at Plaintiff's last visit with Dr. Krueger she rated her pain at its lowest level (that is, at a five to six on a ten-point scale) (*id.*). The ALJ also noted that Plaintiff had never been hospitalized and had received relief with conservative treatment (Tr. 28). "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11thCir. 1988) (citation omitted). Thus, this justification for discounting Dr. Krueger's opinions is proper and is supported by the record.

However, in further discounting Dr. Krueger's opinion, the ALJ noted that Plaintiff's own statements indicated she was capable of performing work activity (Tr. 27), but the ALJ failed to identify those statements of Plaintiff to which he refers, and this court has found none that are clearly inconsistent with the opinions of Dr. Krueger regarding Plaintiff's pain. For example, Dr. Krueger found that Plaintiff had pain present to such an extent as to be distracting to the adequate performance of daily activities or work (Tr. 309), and Plaintiff testified that she cannot keep focused on work duties and that she cannot keep her mind on what she is doing (Tr. 667). She further stated that she cannot read because she cannot concentrate (Tr. 668). Dr. Krueger also found that physical activity would greatly increase her pain, and to such a degree, as to cause distraction from tasks or total abandonment of tasks (Tr. 309). Although the ALJ suggested that Plaintiff's daily activities

were inconsistent with this opinion, specifically noting that Plaintiff was able to care for herself and her children, he failed to consider Plaintiff's statements demonstrating that she cannot do these things without the assistance of others. For example, the ALJ stated that Plaintiff "reported that she prepares her own meals" (Tr. 26), but this is not an accurate characterization of what Plaintiff actually said. Plaintiff stated that she cooks some meals, but most often her daughter cooks (Tr. 665). Plaintiff also stated that if she prepares a meal, it has to be a fast and easy meal because she cannot stand for long periods (Tr. 107). Similarly, Plaintiff noted that she grocery shops, but her children have to carry the groceries; she puts clothes into the washing machine, but someone else transfers them to the dryer (Tr. 665–66); she does limited housekeeping and shopping due to pain; and her personal care, such as bathing and grooming, causes pain (Tr. 107). Moreover, Plaintiff indicated that her pain prevented her from working at a computer (Tr. 674). Finally, Dr. Krueger found that pain and/or drug side effects could be expected to be severe and to limit effectiveness by causing distraction, inattention, drowsiness, and other things (Tr. 309). Again, this court has found no statement of Plaintiff that refutes this opinion (Plaintiff did indicate that she suffers few side effects from her medications, but she consistently maintained that pain prevented her from fully performing work or daily activities (*see, e.g.*, Tr. 106–08)).

If daily activities are to be considered, the ALJ must do so in the context of all of the evidence in the record:

> We have consistently held that in ascertaining whether the [Commissioner's] findings are supported by substantial evidence, we do not consider only those parts of the record that support those findings, but rather must "view the entire record and take account of evidence in the record which detracts from the evidence relied on by the [Commissioner]."

Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).

The Parker court found the ALJ's reliance upon plaintiff's "daily activities" to discount her testimony as to pain flawed for failure to consider the plaintiff's testimony that she had to lie down after two hours of such work. *Id.* Similarly, in Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995), the court held that a conclusory citation to a plaintiff's "daily activities" as a basis for failing to believe her testimony as to pain was insufficient where there was a medical condition that reasonably could have given rise to the pain described, and, although she testified that she cooked and shopped for herself, she had trouble putting on her clothing. And in Lewis v. Callahan, 125 F.3d

1436, 1441 (11th Cir. 1997), the court held that participation in "everyday activities of short duration, such as housework or fishing," does not disqualify a plaintiff from disability, so long as such activities are not inconsistent with limitations recommended by the treating physicians.  Thus, this court concludes that the ALJ erred in finding that Plaintiff's statements or daily activities refuted the opinions of Dr. Krueger.

Finally, in discounting Dr. Krueger's opinions, the ALJ stated that Plaintiff's "clinical examination findings have often been found to be normal or minimally abnormal, and the objective diagnostic evidence of record has been sparse" (Tr. 28).  In support of this statement, the ALJ stated, "Specifically, an x-ray on January 25, 2003 was negative," and he referenced Exhibit 14-F, the x-ray from Santa Rosa Medical Center taken after Plaintiff's automobile accident (Tr. 28, 252–62).  Indeed, an x-ray of Plaintiff's cervical spine was taken at that time and revealed normal vertebral bodies (Tr. 260).  However, the ALJ's reference to this x-ray alone mischaracterizes the medical evidence of record.  In addition to the x-ray, Plaintiff underwent MRI scanning of her cervical and lumbar spine twice since 2001.  Medical records from a cervical MRI performed on September 15, 2003 reveal a C6-7 broad central and left central disc herniation, producing spinal stenosis and neuroforaminal stenosis, and a C5-6 left central disc herniation, producing left sided spinal stenosis (Tr. 389).  Moreover, a lumbar MRI performed on August 18, 2003 revealed a left lateralizing disc herniation at L4-5 (Tr. 390).  These MRI reports are consistent with earlier MRIs performed in September 2002 (lumbar scan revealing herniated nucleus pulposus at L4-5 (Tr. 276)) and February 2001 (cervical MRI revealing disc herniations at C5-6 and C6-7 (Tr. 278)).  Thus, this reason of the ALJ for discounting Dr. Krueger's opinion is not supported by the record.

In sum, only one of three reasons provided by the ALJ supports his decision to discount Dr. Krueger's opinions; namely, that Plaintiff's condition improved with treatment and medication.  In Social Security cases, the role of this court is to determine whether the law has been properly applied and whether substantial evidence supports the Commissioner's findings, not to find facts.  Because of this limited role, the general rule is to reverse and remand for additional proceedings when errors occur.  *See, e.g.*, Davis v. Shalala, 985 F.2d 528, 534 (11th Cir.1993) (referring to general practice); Holt v. Sullivan, 921 F.2d 1221, 1223-24 (11th Cir.1991).  A case may be remanded for an award of disability benefits, however, where the Commissioner has already considered the essential

evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  Davis, 985 F.2d at 534; *see also* Bowen v. Heckler, 748 F.2d 629, 636 (11th Cir.1984) (if the Commissioner's decision is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the decision with or without remanding the case for a rehearing); Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The record . . . is fully developed and there is no need to remand for additional evidence."); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216–17 (11th Cir. 1991) (finding that improperly refuted testimony of a treating physician must be accepted as true and remanding "with directions to enter a finding of total disability").  In the instant case, a remand is appropriate, as disability has not been established without doubt, and it is not for this court to decide whether the fact that Plaintiff's condition improved with treatment and medication, alone, is sufficient to discount the opinion of her treating physician.

      B.      Listing 1.04

The ALJ found that Plaintiff has "severe" degenerative disc disease, but that it did not meet or medically equal the criteria for any impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (the Listings) (Tr. 19, 27).  However, in finding Plaintiff's disc disease non-severe, the ALJ failed to evaluate Plaintiff's impairment pursuant to the criteria of Listing 1.04 (Disorders of the Spine) or even mention Listing 1.04, which states:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04 (emphasis added).

In reaching his finding that Plaintiff's impairment did not meet or equal any Listing, the ALJ extensively reviewed the medical evidence, including the records of Dr. Vernali, Dr. Sackheim, and Dr. Krueger, all of whom were treating physicians, as well as the chiropractor's report and the

opinions of the agency physicians (*see* Tr. 20–23).  The ALJ erred, however, in failing to specifically address Listing 1.04.

Initially, it appears that Plaintiff satisfies Listing 1.04(A)'s threshold requirements, as Plaintiff indisputably suffers from <u>degenerative disc disease</u> (*see* Tr. 27).  Additionally, an MRI revealed a L4-5 central HNP (<u>herniated nucleus pulposus</u>) (Tr. 276).  Moreover, the records of Dr. Krueger appear to establish the remaining requirements of the Listing.  Specifically, Dr. Krueger's treatment notes indicate that Plaintiff underwent an MRI which revealed a "left lateralizing disk herniation at L4-5 with a 7 mm extrusion which protrudes inferiorly and <u>compression</u> of the left ventral dural sac and <u>mass effect upon the L5 nerve root</u>" (Tr. 392) (emphasis added).  Additionally, Dr. Krueger noted on more than one occasion that Plaintiff's <u>straight leg raising tests were positive</u> (Tr. 393, 395), and Dr. Vernali noted Plaintiff's <u>abnormal range of motion</u> to the lumbar and cervical spine (Tr. 196).

Thus, the ALJ erred in finding Plaintiff's degenerative disc disease and/or HNP non-severe without specifically addressing the criteria of Listing 1.04.  Because this court cannot substitute its judgment for that of the Commissioner, upon remand the Commissioner should be directed to evaluate Plaintiff's impairment under Listing 1.04. and determine whether or not the Listing is met.

C.      Opinion of the Vocational Expert

A hypothetical question must comprehensively describe a claimant's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence.  <u>Pendley v. Heckler</u>, 767 F.2d 1561, 1563 (11th Cir. 1985).  However, the ALJ is not required to include findings in the hypothetical that he has properly rejected as unsupported.  *See* <u>McSwain v. Bowen</u>, 814 F.2d 617, 620 n.2 (11th Cir. 1987).

In the instant case, the ALJ asked the VE to consider a hypothetical individual who was limited to sedentary work and whose ability to do computer work and fine manual dexterity was limited due to carpal tunnel syndrome (Tr. 678–79).  The ALJ did not include the limitations set forth by Dr. Krueger on his clinical assessment of pain form.  For the reasons discussed *supra*, this court cannot conclude whether those opinions of Dr. Krueger were properly discounted.  Upon remand, the ALJ should be directed to reconsider the opinions of Dr. Krueger concerning Plaintiff's pain and include those opinions found to be credible in any hypothetical questions posed to a VE.

Moreover, the ALJ should clarify to what extent Dr. Krueger's physical capacities limitations are accepted (or rejected), and those that are accepted should be included in any hypothetical questions of a VE.

       D.      Credibility of Plaintiff's Testimony

       Finally, Plaintiff contends that the ALJ erred in discounting her testimony regarding pain. As noted above, the ALJ rejected her testimony, in part, because he concluded that it was in conflict with evidence regarding Plaintiff's daily activities.  As discussed above, the ALJ erred in his consideration of Plaintiff's daily activities.  However, in further discounting Plaintiff's testimony, the ALJ correctly noted that Plaintiff's pain was improving with treatment, and he found it "extremely significant that [Plaintiff] has refused further epidural injections" (Tr. 28).  Indeed, Dr. Sackheim's records reflect Plaintiff's repeated refusal to undergo trigger point injections, "LBS" treatment, and/or a surgical consult (*see* Tr. 269–70, 272–73).    A claimant's failure to seek treatment is a proper factor for the ALJ to consider.  *See* <u>Watson v. Heckler</u>, 738 F.2d 1169, 1173 (11th Cir. 1984) (finding that in addition to objective medical evidence, it is proper for ALJ to consider use of painkillers, failure to seek treatment, daily activities, conflicting statements, and demeanor at the hearing).  Thus, one reason for discounting Plaintiff's complaints of pain is supported by the record, but the other is not.  Upon remand, the ALJ should reconsider Plaintiff's testimony and other complaints of pain.  Should the testimony again be rejected, it should be done so based only upon reasons with substantial support in the record.

       Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED**, that the Commissioner be ordered to remand this case to the Administrative Law Judge for further proceedings consistent with this report and recommendation, that judgment be entered in favor of the Plaintiff pursuant to sentence four of 42 U.S.C. § 405(g), and that the clerk be directed to close the file.

       At Pensacola, Florida this <u>22nd</u> day of September 2006.


                     /s/ *Elizabeth M. Timothy*
                     **ELIZABETH M. TIMOTHY**
                     **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control**.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).